*TOLEDO & OHIO CENT. RY. v. HARRY M. COLEMAN.

1. RELEASE FOR PERSONAL INJURIES VOIDABLE BUT NOT VOID ESTABLISHED REQUIRES INSTRUCTED VERDICT FOR DEFENDANT.

>Where, in an action for damages resulting from injuries alleged to have been sustained through the negligence of the defendant, the answer sets forth as a defense that the plaintiff in writing released the defendant from all claims resulting from such alleged negligence, and the reply sets forth facts which, if established, would render such release voidable, and further fact which, if established, would render such release void, and there is evidence tending to establish the facts which might render the release voidable only, but no evidence tending to establish the facts necessary to be established to render the release void, it is the duty of the court, on motion of the defendant, to instruct the jury to return a verdict for the defendant.

2. ONE DOLLAR CONSIDERATION FOR RELEASE.

>One dollar is sufficient consideration, in law, to sustain such release.

3. VOIDABLE RELEASE CANNOT BE PLEADED IN REPLY TO DEFENSE OF RELEASE EXECUTED.

>Facts that, if established, would render the release void, may be pleaded in the reply by way of avoidance of the defense of release; but if the facts would render the release voidable only, and not void, the plaintiff cannot avail himself thereof by way of reply.

4. CANCELLATION OF VOIDABLE RELEASE FOR INJURIES RECEIVED NOT OBTAINABLE IN REPLY TO DEFENSE INTERPOSED.

>If the release is voidable only and not void, the plaintiff cannot maintain his action while it stands uncanceled, and he cannot seek its cancellation in a reply but must do so by petition in a suit in equity for that purpose only, or as a cause of action in the same suit in which he seeks to recover damages for the injury. *Perry* v. *O'Neil & Co.* 78 Ohio St. 200, followed.

---

*Affirmed, no op., *Coleman* v. *Railway*, 81 O. S. 522.

Railway v. Coleman.

**PARKER, J.**

Harry Coleman recovered a judgment in the court of common pleas against the plaintiff in error on account of injuries received to his eye, through the bursting of a water glass, part of a steam gauge of an engine, while he was in the employ of and was in the line of his duty as locomotive fireman; many interesting questions have been presented and argued, but I shall discuss but one.

By way of the defense to the action the railway company pleaded a release given by Coleman to the company, signed by him and dated August 9, 1902. This release seems to have reference to this particular injury, but subsequently on three other occasions Mr. Coleman received other injuries which appear to have been slight, and he executed like releases with respect to those injuries. Each of these releases contained a general clause releasing the company from all claims for damages up to date, and then each mentions specifically the injuries that had immediately preceded the release.

This release of August 9 reads as follows:

"WHEREAS, on the 7th day of August, 1902, the undersigned, Harry M. Coleman, while in the employ of the Toledo & Ohio Central Railway Company as fireman received certain injuries as follows, to-wit: hit in right eye by piece broken water glass while in said employment at or near Horton station in the state of Ohio; and

"WHEREAS, the said Harry M. Coleman does not make any claim of any class or character against said company, for or on account of said injuries, and admits that the same are not the result of any negligence on the part of said company,

"Now, therefore, in consideration of the sum of one dollar ($1.00) in hand paid, and the further consideration of my re-employment by said the Toledo & Ohio Central Railway Company, for such time only as may be satisfactory to the company, said railway company is hereby released from any and all claims that I, said Harry M. Coleman, claimant herein, ever had or might have against said company, up to date and especially released from any and all other claims arising out of injuries specially set forth herein.

Lucas County.

"Given under my hand and seal at Toledo, Ohio, this 9th day of August, 1902."

And following that is a receipt for the one dollar mentioned in the foregoing agreement and that is signed by Harry M. Coleman and witnessed by H. P. Latta and G. D. Lewis.

What the plaintiff says by way of reply I can hardly state more succinctly than to read it:

"Now comes plaintiff and for reply to the amended answer filed herein, says that it is not true that on the 9th day of August, 1902, or at any other time, plaintiff entered into an agreement by the terms of which he released the defendant for injuries which he suffered as set forth in his petition.

"Plaintiff alleges that on the said 9th day of August, 1902, the plaintiff was still in the employ of the defendant company and that he had not in any way applied for re-employment by said company, and was not re-employed by said company. That at said time he was temporarily off duty because of the injuries which he received by the bursting of the water glass as set forth in his petition.

"Plaintiff says that on or about the 9th day of August, 1902, he was suffering a great deal of pain from the injuries which he received in his right eye, and that said eye was in such condition that he could not use the same, and that his left eye was very much impaired by reason of the injuries to his right eye. That by reason thereof he was unable to read. That on or about the said day, he was at the office of the defendant company in the presence of one Latta, who was in charge of the defendant's round-house, and the superior over plaintiff. That the said Latta placed before plaintiff a paper containing some printed and written matter, which plaintiff now is informed and believes and therefore avers is the paper referred to in said answer and bearing date of August 9, 1902. That at said time said Latta requested plaintiff to affix his signature to said paper in one or more places, and at the time told plaintiff it was a mere formality required by the defendant in all cases wherein a person had met with an injury and did not affect any claim he had against said company. That

48 O. C. C. Vol. 32.

Railway v. Coleman.

at said time plaintiff was unable to read said paper, and that the said Latta and no other person read the same to him or made the contents of the same known to plaintiff, but the said Latta told plaintiff that the same was of no importance, and was a mere formality. That plaintiff relied upon the said statement and affixed his signature as best he could to said paper at the request of the said Latta. That all of the foregoing was well known to said Latta.''

There is more of said reply upon the same subject and of the same tenor, but the substance of it is contained in the paragraphs I have read. There are other averments to the effect that he did not receive the dollar, and that the matter of settling his claim was not discussed and was not considered, and that no idea of that sort was entertained by himself or by the representative of the railroad company, and more to the same effect.

If what I have read were established it would appear that the release was absolutely void. If it were true that Coleman at the time was unable to read by reason of these injuries to his eye, and if he was deceived by Mr. Latta, his superior in the employ of the company, as to the contents of the paper, if he signed the paper under such circumstances, supposing it to be one thing, whereas it was an entirely different thing, that is to say, a mere matter of form that he must sign before he began work again, whereas it was a release of all his claims against the company, if his signature to the release was obtained under such circumstances and by such method, the release would be absolutely void; and under the authorities, this issue of release might be raised by a reply setting forth the facts showing that the release was void.

On the other hand, if the circumstances were such as to make the release simply voidable in law and not void; if the circumstances were such that a court of equity alone could give relief, then the matter could be properly pleaded in a reply; but it would be necessary, before the plaintiff could maintain his suit, for him to get rid of the release by instituting proper proceedings in equity to have it canceled and set aside. That might be done in a separate and distinct cause

of action in the same case as the one wherein he prosecuted his claim for damages, or by suit brought for that purpose only.

As we have said, in this reply, besides the matter pleaded, which, if true, would make the release void, there is much else which, if established, would render the release voidable and would authorize a court of equity to cancel it.

It will be observed that the plaintiff, by bringing this issue into the case by reply, undertook to establish that the release was void.

Now, to go through the record in this case and call attention to all of the testimony bearing upon this issue would take a great deal of time and would not be profitable. I may say, however, generally, that after a careful examination of the record, we are unanimously of the opinion that there is in it no evidence tending to establish the allegations required to be established to render this release void. The evidence does not establish that the plaintiff at the time he signed this release was unable to read; that his eyes were so affected by the injury that he was unable to read, though it appears that his eyes were somewhat affected, and perhaps he could not have read at that time as easily as ordinarily. It does not appear that Mr. Latta stated to the plaintiff that this release was a mere formality, or that it did not affect any claim that he had against the company. In plaintiff's interview with Mr. Latta there was nothing said upon that subject, or to the effect that it was of no importance and a mere formality.

On the contrary it appears that Mr. Latta was a friend of the plaintiff's and that he treated him with entire fairness and candor on this occasion. There was no fraud practiced upon the plaintiff. Had he cared to acquaint himself with the contents of the paper he had full opportunity to do so. It seems quite apparent that he knew substantially what was in the paper.

He received one dollar for the release. It is said that the consideration of one dollar is merely nominal, and that it must be apparent that the plaintiff would not release a substantial claim against the company for a consideration of

Railway v. Coleman.

one dollar. In law, a consideration of one dollar is a valuable consideration, and to fulfill the requirement that a contract shall be supported by a consideration it is as good as a thousand dollars or any other sum. Of course there are circumstances, especially in equity, where the amount or value of the consideration will have weight but it can not be said that this release was void at law because wholly unsupported by a consideration.

The fact is that the plaintiff, after having his eyes injured as we have stated, laid off for a time and had his eyes treated, and when he came back to the company to "sign up" as they call it, he supposed that his injuries were substantially over with and cured. He did not then appreciate or apprehend that he had received the serious and permanent injuries that he now claims he had in fact sustained. And it was therefore, no doubt, that the matter of signing this release for the consideration of one dollar was regarded by him, as it was by Mr. Latta, as somewhat in the nature of a formality and a matter not involving serious consequences.

It is true, and is very apparent from this record, that they did not consider, upon either side, the question of settling for the alleged serious injury that it is said had really been sustained by the plaintiff. But it was known by both that the plaintiff had sustained some injury to his eyes, and that it was with respect to those injuries that the dollar was paid and the release given.

Whether the circumstances were such as that the release should be set aside by a court of equity because of inadequacy of consideration, or because of ignorance of the parties of the true situation, or for any other reason, are questions that we are not now called upon to consider.

That the plaintiff understood that he was signing this release is very apparent from his own testimony. He understood that he was signing a release. Several times in the course of his cross-examination when asked why he signed this paper and what he supposed he was signing, he answered in substance that he supposed he was signing off for the time he had lost; that he was releasing any claim that he might have

against the company for the time he had lost. That of course had reference to the time he had lost by reason of this injury to his eye; and it is apparent that at that time he supposed that the only claim that he had against the company on account of these injuries was for loss of time for a few days—loss of wages in consequence of loss of time, and such loss of time being due to the injury to his eye. So that he knew that he was releasing the company from the only claim that he supposed he had against the company for the injuries that he supposed he had received. Under those circumstances the release is valid in law although he discovered afterwards that he had received more serious injuries than he supposed when he signed the release, and concluded that he should have received a large compensation therefor on settlement instead of one dollar only.

Now this question has been fully considered and passed upon by the Supreme Court of Ohio in a decision recently handed down in the case of *Perry* v. *O'Neil,* 78 Ohio St. 200 [85 N. E. Rep. 41]. When we had the case under consideration we had a certified transcript of the opinion of the Supreme Court, but since we decided it the case has been published. We decide the case at bar upon the authority of *Perry* v. *O'Neil,* *supra.* We will not attempt to add by further comment anything to what is there said in elucidation of this subject.

At the close of all the evidence the trial court was requested by the defendant below to instruct the jury to return a verdict for the defendant in view of the fact that there was no evidence tending to support the allegations of the facts necessary to be established to render this release void. We think that instruction should have been given. As the greater includes the lesser, of course it follows that the verdict on that issue is against the weight of the evidence also.

For these reasons the judgment of the court of common pleas will be reversed and the case will be remanded.

**Wildman** and **Kinkade, JJ.,** concur.